IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALBERT E. WOOLUM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:18-cv-2453-B-BN |
| | § | |
| THE CITY OF DALLAS, TEXAS, | § | |
| SAMUEL DIGBY, and OFFICER | § | |
| DOES 1-9, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Albert E. Woollum, through counsel, brings this civil rights action under 42 U.S.C. § 1983 against the City of Dallas, one named Dallas police officers, and several John Doe Dallas police officers. *See* Dkt. No. 1. The City and Defendant Samuel Digby moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. Nos. 9 & 11. Plaintiff responded to both motions. *See* Dkt. No. 15. After United States District Judge Jane J. Boyle referred this action to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) on February 1, 2019, *see* Dkt. No. 18, the City and Officer Digby filed reply briefs, *see* Dkt. Nos. 19 & 20.

The Court then denied the City's motion without prejudice, *see* Dkt. No. 21, citing the City's reply brief, in which it represented that – because "Plaintiff has requested an opportunity to amend his live Complaint to correct any pleading deficiencies, and the City acknowledges that even if the Court concludes that the

Plaintiff's Complaint fails, in whole or in part, to state a claim, the Court should permit Plaintiff to replead" – "the City does not oppose the Court denying without prejudice the City's Rule 12(b)(6) motion to dismiss and permitting the Plaintiff an opportunity to amend his complaint to cure the pleading deficiencies addressed in the City's motion to dismiss," Dkt. No. 19 at 2.

After considering Officer Digby's motion to dismiss and the parties' briefing, the undersigned enters these findings of fact, conclusions of law, and recommendation that, to the extent and for the reasons explained below, the Court should grant the motion to dismiss in part and deny it in part without prejudice to Plaintiff's filing an amended complaint within a reasonable time to be set by the Court.

## Applicable Background

The alleged facts supporting Plaintiff's claims against Officer Digby, in his "individual and official capacities," Dkt. No. 1 at 1 – for (1) violating Plaintiff's "constitutional right to be free from false arrest"; (2) depriving him "of the right to engage in protected speech in violation of the Free Speech Clause of the First Amendment"; and (3) violating his "Fourteenth Amendment Rights to have equal protection under the law," *id.*, ¶¶ 31-42 – are:

> Plaintiff Albert E. Woolum is a 67-year-old veteran, who answered this country's call for service during the Vietnam conflict.
> Between 1971 and 1975, Plaintiff completed two WESTPAC deployments into hostile territories, for which he received combat action commendation and later was honorably discharged.
> Plaintiff is proud to have served his country and supports citizens' right to free speech as guaranteed under the United States Constitution.
> Consistent with this belief, Plaintiff has steadfastly exercised his right to free speech.

-2-

In particular, Plaintiff exercises his right to free speech by protesting racism, bigotry, and hatred frequently in Dallas County, and is a well-known person to the Dallas Police Department due to, inter alia, his numerous personal appearances at rallies, viral videos about him on the internet, and TV and print news coverage about him.

On or about September 16, 2017, Plaintiff went to protest certain actions to be conducted by This is Texas Freedom Force ("TITFF").

TITFF has been described as a neo-confederate organization; its self-described mission is to, inter alia, "mak[e] sure left-wing groups don't get out of line."

TITFF has been known to conduct rallies, armed with assault rifles and other weapons, in support of its various neo-confederate causes.

As relevant here, on September 16, 2017, TITFF organized an armed rally to oppose the removal of a Robert E. Lee statute located at Oak Lawn Park, 3333 Turtle Creek Blvd, Dallas, TX 75219 ("the Armed Neo-Con Rally"), a public park.

Plaintiff planned to attend the rally to oppose TITFF's views.

Unlike TITFF, Plaintiff was unarmed.

Unlike TITFF, Plaintiff did not have a group of confederates to engage in physical violence to keep opposing protesters "in line."

Unlike TITFF, Plaintiff was not breaking the law by conducting a rally; on information and belief, TITFF had not secure proper permits to conduct the Armed Agitation.

On information and belief, Defendants DPD and Officer Does 1-9 knew TITFF did not have proper permits to conduct the Armed Neo-Con Rally but allowed it to proceed anyway because Defendants supported TITFF's political viewpoints.

During the Armed Neo-Con rally, both Plaintiff and TITFF members were visible to Defendant Officers at all times.

At all times relevant, Defendant Officers observed Plaintiff engaged in peaceful, non-violent protest of the Armed Neo-Con rally.

On information and belief, Defendant Officers observed TITFF members becoming increasingly agitated with Plaintiff during the Armed Neo-Con Rally.

On information and belief, Defendant Officers observed TITFF members surround Plaintiff while yelling obscenities at him.

On information and belief, Defendant Officers observed a TITFF member physically attack Plaintiff by grabbing him by the throat and slamming him on a truck as other TITFF members encouraged this violent act.

Immediately thereafter, Defendant Officers arrested Plaintiff, using unnecessary and excessive force for no reason whatsoever.

Thereafter, Defendant Officers held Plaintiff in jail for 16 hours

before releasing him.

Defendants DPD and Defendant Officers caused "disorderly conduct" and "offensive language" charges to be brought against Plaintiff despite defendants' failure to observe any disorderly conduct or hear any offensive language.

Defendants DPD and Defendant Officers falsely arrested and charged Plaintiff because they preferred to allow the Armed Neo-Con Rally continue uninterrupted by Plaintiff's exercise of his free speech after violently grabbing him and hauling him into police custody.

All acts complained of herein were perpetrated under color of law; on information and belief, Defendants' decision to falsely arrest and charge Plaintiff were part of a pattern, practice, and/or custom of Defendants.

These bogus charges were ultimately dismissed as they lacked basis in law or fact.

As a result, Plaintiff's constitutional and civil rights were violated; he has suffered mental, emotional, and financial harm as a result.

*Id.*, ¶¶ 7-30. These facts also support Plaintiff's claims against the City under a theory of municipal liability. *See id.*, ¶¶ 43-56.

## Legal Standards

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). But a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility

-4-

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(a)(2)))).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id*. Instead, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities Project*, 920 F.2d at 899

("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context."))).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project*, 920 F.2d at 900 (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

While the United States Court of Appeals for "the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex.

-6-

2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

## Discussion

I.    Official Capacity

To the extent that Plaintiff brings his claims against Officer Digby in his official capacity, "[a]n official-capacity lawsuit is 'only another way of pleading an action against an entity of which an officer is an agent.'" *Culbertson v. Lykos*, 790 F.3d 608, 623 (5th Cir. 2015) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). When an individual is sued is his official capacity, liability is imposed "on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond." *Id.* (quoting *Brandon v. Holt*, 469 U.S. 464, 471-72, (1985)); *see also Graham*, 473 U.S. at 166 ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

"A suit against a city police department officer in his official capacity is a suit against the governmental entity for which the individual defendant is an agent, here [the City of Dallas], if Plaintiff does not demonstrate that the [Dallas] Police Department received a grant of authority from [the City of Dallas] to engage in separate litigation." *Parker v. Missouri City, Tex.*, Civ. A. No. H-12-2484, 2014 WL 7004061, at *10 (S.D. Tex. Dec. 10, 2014) (citing *Graham*, 473 U.S. at 165; *McHenry v. Stinnett Police Dep't*, No. 2:13-cv-228-J, 2014 WL 3939512, at *4 (N.D. Tex. Feb. 14,

2014)); *see also Morgan v. City of Waco*, No. 3:01-cv-2818-M, 2002 WL 1776935 (N.D. Tex. July 30, 2002) (determining that official capacity claims against Rockwall police officers were claims against the City of Rockwall); *cf. Combs v. City of Dallas*, 289 F. App'x 684, 686 (5th Cir. 2008) (per curiam) (affirming dismissal of "the [Dallas Police Department, or DPD,] as a defendant because it is a servient political department that does not enjoy a separate and distinct legal existence from the City of Dallas," as the plaintiff failed to "show that the City of Dallas granted the DPD the capacity to sue or be sued as a separate and distinct entity" (citing *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991))).

Thus, where a plaintiff brings claims against both a public official, such as a police officer, in his official capacity and the public entity for which he works, the claims "essentially merge." *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000). The Court may then dismiss the claims against the public official as duplicative. *See Flores v. Cameron Cnty.*, 92 F.3d 258, 261 (5th Cir. 1996) (where the district court had dismissed claims against county commissioners in their official capacities "because those claims were duplicative of the claims against the County"); *see also Thomas v. City of Galveston, Tex.*, 800 F. Supp. 2d 826, 832 (S.D. Tex. 2011) ("The Fifth Circuit has held that it is appropriate to dismiss claims against officers in their official capacities when the 'allegations duplicate claims against the respective governmental entities themselves.'" (quoting *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001))).

So, because Plaintiff has brought suit against the City of Dallas – based on the

same factual allegations – the official capacity claims against Officer Digby should be dismissed with prejudice.

II.   <u>Generalized Allegations</u>

Officer Digby cites as a primary basis to dismiss the claims against him Plaintiff's failure to specifically allege how he – as opposed to how the John Doe officers – harmed Plaintiff. *See, e.g.*, Dkt. No. 11 at 13 ("Woolum fails to identify any discriminatory intent or purpose on the part of Officer Digby. Woolum pleads that the 'DPD and Officer Does 1-9' supported TITFF's political views, but Woolum does not plead that Officer Digby himself supported TITFF's views.").

"When the plaintiff's complaint uses blanket terms covering all the defendants, by lumping them together or calling them collectively ["Defendants"] these allegations are properly disregarded unless the reference to [particular defendants] can be clearly inferred." *Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) (Jones, J., dissenting) (citing *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 & n.14 (11th Cir. 2015) (characterizing that decision as "describing this form of 'shotgun pleading' as a 'sin' consisting of 'asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions'")).

But, for present purposes, the Court may plausibly infer that Plaintiff presently alleges, before the benefit of discovery, that all Dallas police officers involved in his September 16, 2017 arrest are liable for the harms set out in the complaint. That position is reasonable for purposes of this motion to dismiss. And Plaintiff need not, for

example, specifically allege now which officer held which views or which officer was aware (or unaware) of facts to justify a reasonable belief that Plaintiff committed (or did not commit) an offense.

> As another federal court recently observed, also as a preliminary matter,
>
> the MPD Officers have proffered no authority for the odd proposition that a complaint that alleges false arrest and other police officer misconduct must specifically link the complained-of conduct to *particular* police officers (presumably by name) in order to survive a motion to dismiss. The lack of any support for this quirky contention is not surprising, because this Court cannot fathom how such could possibly be the state of the law. That is, at the beginning of the case – prior to discovery and before the plaintiff has access to any information about who the allegedly offending officers are, much less statements and reports from participants and witnesses regarding what each officer has done – it is impossible to imagine that a complaint involving the allegedly wrongful conduct of a number of police officers could ever contain the specificity that Defendants here say is required. And, indeed, existing precedent clearly indicates that no such pleading standard exists.

*Robinson v. Farley*, 264 F. Supp. 3d 154, 160 (D.D.C. 2017); *cf. Greer v. City of Highland Park, Mich.*, 884 F.3d 310, 315-16 (6th Cir. 2018) ("The officers argue that the Greers are required to specify what actions each officer took during execution of the warrant. Although 'damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right,' courts are disinclined to dismiss complaints that fail to allege specific conduct by each officer when the officers' actions have made them impossible to identify. ... Here, the Greers' 'inability to identify the specific officers involved in their alleged deprivation of rights does not mandate dismissal' because the officers allegedly wore face masks

and refused to identify themselves. Thus, 'the agents' intent to conceal contributed to [the Greers'] impaired ability to identify them.' ... [T]he parties here do not dispute that a raid of the Greers' home occurred, and the appealing officers have been identified as the parties who executed the search warrant. Under these circumstances, if we dismissed the Greers' complaint at the pleading stage, we would risk immunizing officers to Fourth Amendment claims so long as they successfully disguised their identities." (citations omitted)).

III.    <u>False Arrest</u>

"A constitutional claim for false arrest, which [Plaintiff] brings through the vehicle of § 1983, 'requires a showing of no probable cause.'" *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019) (quoting *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009)).

"The Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). "The facts must be known to the officer at the time of the arrest" and "must be particularized to the arrestee." *Club Retro*, 568 F.3d at 204 (citations omitted). And a court "will find that probable cause existed if the officer was aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense." *Id.* (citation omitted); *see also McLin*

*v. Ard*, 866 F.3d 682, 694 (5th Cir. 2017) ("[P]robable cause is the 'sum total of layers of information and the synthesis of what police have heard, what they know, and what they observed as trained officers.'" (quoting *United States v. Shaw*, 701 F.2d 367, 376 (5th Cir. 1983) (quoting, in turn, *United States v. Edwards*, 577 F.2d 883, 895 (5th Cir. 1978) (en banc)))).

Officer Digby asserts that Plaintiff "fails to plead a factual basis for an unlawful arrest as to [him] beyond mere labels and conclusions." Dkt. No. 11 at 14. Plaintiff counters that "DPD officers saw Plaintiff peacefully protesting, saw that he was attacked by a group of racist thugs, and arrested him anyway." Dkt. No. 15 at 10 (citing Dkt. No. 1, ¶¶ 21-26).

And Plaintiff has not alleged facts from which the Court may infer that, when he was arrested without a warrant, he was committing in the Dallas police officers' presence or view a felony or an offense against the public peace – which would defeat a constitutional false arrest claim. *See, e.g., Calhoun v. Villa*, Civ. A. No. H-16-3001, 2017 WL 3701971, at *3 (S.D. Tex. Aug. 7, 2017) ("As for Calhoun's complaints that the officers who arrested him lacked probable cause to support the arrests, Calhoun's own allegations in his Complaint, that the arresting officers witnessed him – both in the street when there was a nearby sidewalk, and [on] the railroad tracks – defeat his claim." (citation omitted)), *rec. adopted*, 2017 WL 3670028 (S.D. Tex. Aug. 24, 2017), *aff'd*, 761 F. App'x 297, 299-300 (5th Cir. 2019) (per curiam) ("There is an applicable Texas statute that authorizes peace officers to make warrantless arrests in this situation: '[a] peace officer may arrest an offender without a warrant for any offense

-12-

committed in his presence or within his view.' Because both misdemeanor violations occurred within view of the officers, they would be justified in making an arrest, even though the violations were only punishable by a fine. The district court was correct in applying relevant state law to the question at hand. Because a state statute authorized the warrantless arrest in this case, the officers' actions were not unconstitutional, and the dismissal was appropriate." (quoting TEX. CRIM. PROC. CODE ANN. § 14.01; footnote omitted)).

Taking the well-pleaded facts supporting this claim as true and viewing those facts in the light most favorable to Plaintiff – as the Court must do at this stage – the Court may infer from this content that Plaintiff's arrest was not supported by probable cause. Plaintiff has therefore alleged a plausible false arrest claim against Officer Digby and the John Doe officers. While the Court must accept for now Plaintiff's allegations that, "[a]t all times relevant," he "engaged in peaceful, non-violent protest of the Armed Neo-Con rally" and that this peaceful, non-violent protest is what triggered "TITFF members [to become] increasingly agitated with Plaintiff," leading to an altercation (or as Plaintiff alleges "TITFF members physically attack[ing]" him), Dkt. No. 1, ¶¶ 22-26, Plaintiff must ultimately provide evidence to prove his version of the events leading to his arrest, or this claim will fail.

IV.   First Amendment

Plaintiff claims that, by falsely arresting him, the officers, including Officer Digby, retaliated against him for exercising his First Amendment right to protest. Officer Digby contends that this claim should be dismissed because Plaintiff has failed

to plausibly allege both that the alleged "actions would chill a person of ordinary firmness from continuing to engage in protest activities" and that the alleged "actions were substantially motivated by animus against [Plaintiff's] constitutionally protected rights." Dkt. No. 20 at 5. But Plaintiff asserts that these arguments fail "because common sense and case law confirm that falsely arresting a non-violent person engaged in First Amendment activity is ample ground for pursuing a First Amendment claim." Dkt. No. 15 at 10 (footnote omitted).

> To prevail on a § 1983 claim for First Amendment retaliation, [Plaintiff] must show that "(1) he was engaged in constitutionally protected activity; (2) the defendant[s'] actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant[s'] adverse actions were substantially motivated by the constitutionally protected conduct."

*McLin*, 866 F.3d at 696 (quoting *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002); footnote and original brackets omitted).

Alleging a First Amendment violation based on retaliation "requires some showing that the plaintiff's exercise of free speech has been curtailed." *Id.* at 696-97 (quoting *Keenan*, 290 F.3d at 259; citations omitted). Although, the chilling "effect on freedom of speech ... need not be great in order to be actionable," *Keenan*, 290 F.3d at 569 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)), a plaintiff must allege curtailment of his speech to state a plausible claim for retaliation under the First Amendment, *see, e.g.*, *McLin*, 866 F.3d at 697 ("The assertion that McLin suffered 'violations of his First Amendment rights' is a legal conclusion and is not entitled to an assumption of truth. McLin is left with an allegation of 'great personal damage,' which

-14-

does not demonstrate that he reduced or changed his exercise of free speech in any way." (citations omitted)).

That said, "[l]egally, a false arrest may chill further speech by a person of ordinary sensibilities." *Arizmendi v. Brownsville Indep. Sch. Dist.*, No. 1:16-CV-00063, 2017 WL 4479951, at *10 (S.D. Tex. May 26, 2017) (citing *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 917 (9th Cir. 2012) ("'[A]rresting someone in retaliation for their exercise of free speech rights' is sufficient to chill speech is an understatement." (quoting *Beck v. City of Upland*, 527 F.3d 853, 871 (9th Cir. 2008)))), *rev'd on other grounds*, 919 F.3d 891 (5th Cir. 2019). That allegation, present here, satisfies the second prong for pleading purposes.

Turning to the third prong, ultimately, "[a] plaintiff may demonstrate that his protected conduct was a substantial or motivating factor behind a defendant's action by providing direct evidence of a retaliatory motive, or by relying upon 'a chronology of events from which retaliation may plausibly be inferred.'" *Hanna v. LeBlanc*, Civ. A. No. 15-2851, 2017 WL 2198345, at *10 (W.D. La. Mar. 8, 2017) (quoting *Brady v. Houston Indep. Sch. Dist.*, 113 F.3d 1419, 1425 (5th Cir. 1997)), *rec. adopted*, 2017 WL 2198188 (W.D. La. May 18, 2017). But, for present purposes, the same chronology that supports Plaintiff's false arrest claim supports an inference that he has plausibly alleged the third prong of this claim.

Plaintiff has therefore alleged a plausible First Amendment retaliation claim against Officer Digby and the John Doe officers.

-15-

V.    <u>Fourteenth Amendment Equal Protection</u>

The Equal Protection Clause prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws," U.S. CONST. amend. XIV, § 1, which "is essentially a direction that all persons similarly situated should be treated alike," *Club Retro*, 568 F.3d at 212 (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)); *see also Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) ("The Equal Protection Clause directs that persons similarly situated should be treated alike." (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982))).

To state an equal protection claim, a plaintiff typically alleges that he "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Club Retro*, 568 F.3d at 212 (internal quotation marks omitted). Thus, no equal protection violation is alleged where a plaintiff "fails to allege any facts showing that [others were] similarly situated." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 414 (5th Cir. 2015) (citing *Club Retro*, 568 F.3d at 213); *see also Gibson v. Tex. Dep't of Ins. – Div. of Worker's Comp.*, 700 F.3d 227, 238 (5th Cir. 2012) (a viable claim under the Equal Protection Clause must include an allegation that plaintiff "has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment'" (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000))); *Woodard v. Andrus*, 419 F.3d 348, 354 (5th Cir. 2005) ("Woodard has made no showing that Andrus is selectively enforcing the state statute based upon any impermissible ground. She does not assert that Andrus is distinguishing between

different groups. Therefore, Woodard has not stated an equal protection claim." (citing *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996))).

Here, even if the Court accepts that TITFF and Plaintiff are similarly situated, Plaintiff fails to specifically allege that he was subjected to treatment different than the group that he was counter-protesting – that he was arrested, while they were not. And, while Plaintiff may add this specific allegation in his response to the motion to dismiss, *see* Dkt. No. 15 at 9 ("Plaintiff was treated differently from the TTF racist (and violent) protestors because he was unlawfully arrested after being attacked and they were not."), from this response, it is not clear if Plaintiff claims that TITFF protestors were not arrested or if they, in his view, were lawfully arrested while he was "unlawfully arrested."

Regardless, Plaintiff may not amend his allegations through a response to a motion to dismiss. "[A] claim for relief" must be made through a pleading, FED. R. CIV. P. 8(a), and a response to a motion is not among the "pleadings [that] are allowed" under the Federal Rules of Civil Procedure, FED. R. CIV. P. 7(a); *see Klaizner v. Countrywide Fin.*, No. 2:14-CV-1543 JCM (PAL), 2015 WL 627927, at *10 (D. Nev. Feb. 12, 2015) ("All claims for relief must be contained in a pleading. A response to a motion is not a pleading and it is improper for the court to consider causes of action not contained in the pleadings." (citations omitted); *cf. Crisco v. Lockheed Martin Corp.*, No. 4:10-cv-418-A, 2010 WL 3119170, at *2 n.2 (N.D. Tex. Aug. 4, 2010) ("Rule 8 requires that a statement of the court's jurisdiction be included in a 'pleading,' and plaintiff's response to defendant's motion is not a pleading." (citation omitted)).

-17-

The Court should dismiss without prejudice Plaintiff's equal protection claim.

## Recommendation

The Court should grant in part and deny in part Defendant Samuel Digby's motion to dismiss [Dkt. No. 11] without prejudice to Plaintiff Albert E. Wollum's filing an amended complaint within a reasonable time to be set by the Court.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 24, 2019

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

-18-