IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALBERT E. WOOLUM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:18-cv-2453-B-BN |
| | § | |
| THE CITY OF DALLAS, TEXAS, | § | |
| SAMUEL DIGBY, and OFFICER | § | |
| DOES 1-9, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Albert E. Woolum, through counsel, brought this civil rights action against the City of Dallas, one named Dallas police officer, and several John Doe Dallas police officers. *See* Dkt. No. 1. United States District Judge Jane J. Boyle referred Woolum's lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b). *See* Dkt. No. 18.

Now before the Court are the City's renewed motion to dismiss, *see* Dkt. No. 26, and Defendant Samuel Digby's motion for summary judgment on qualified immunity, *see* Dkt. Nos. 29 & 30.

The undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should grant both and therefore dismiss the claims against these defendants with prejudice.

**Applicable Background**

Woolum filed this action based on his arrest in September 2017 while attending

a counter-protest against those protesting the City's removal of the Robert E. Lee statute from Oak Lawn Park. *See generally* Dkt. No. 1.

Both the City and Digby moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. Nos. 9 & 11. Woolum responded to both motions. *See* Dkt. No. 15. And the City and Digby filed reply briefs. *See* Dkt. Nos. 19 & 20.

The Court denied the City's motion without prejudice, *see* Dkt. No. 21, citing its reply brief, in which the City represented that, because "Plaintiff has requested an opportunity to amend his live Complaint to correct any pleading deficiencies, and the City acknowledges that even if the Court concludes that the Plaintiff's Complaint fails, in whole or in part, to state a claim, the Court should permit Plaintiff to replead," "the City does not oppose the Court denying without prejudice the City's Rule 12(b)(6) motion to dismiss and permitting the Plaintiff an opportunity to amend his complaint to cure the pleading deficiencies addressed in the City's motion to dismiss," Dkt. No. 19 at 2.

On June 25, 2019, the Court granted in part and denied in part Digby's motion to dismiss, dismissing Woolum's official capacity claims and his equal protection claim, allowing to proceed his personal capacity claims for false arrest and First Amendment retaliation, and granting Woolum leave to file an amended complaint by July 9, 2019. *See Woolum v. City of Dallas, Tex.*, No. 3:18-cv-2453-B-BN, 2019 WL 2604125 (N.D. Tex. May 24, 2019), *rec. accepted*, 2019 WL 2601822 (N.D. Tex. June 25, 2019).

No amended complaint was filed. Digby therefore answered the original complaint. *See* Dkt. No. 25. And the City renewed its motion to dismiss. *See* Dkt. No.

26.

Through his answer, Digby asserted qualified immunity. *See id.*, ¶¶ 2.5, 2.6, &

2.7. He then filed a court-ordered motion for summary judgment on this nominally

affirmative defense. *See* Dkt. Nos. 29 & 30; *see also* Dkt. No. 28. Two days later, the

Court allowed Woolum leave to file a motion for leave to conduct limited discovery to

respond to the qualified immunity issues raised in the summary judgment motion. *See*

Dkt. No. 31. But no timely motion was filed. And the Court later denied Woolum's

unopposed motion for leave to conduct limited discovery (out of time). *See Woolum v.*

*City of Dallas, Tex.*, No. 3:18-cv-2453-B-BN, 2019 WL 6619320 (N.D. Tex. Dec. 5, 2019).

Woolum also failed to file a timely response to the City's renewed motion to

dismiss. And the Court struck and unfiled his untimely response to that motion [Dkt.

No. 32] (a filing that further requested leave to file an out-of-time amended complaint)

without prejudice to his re-filing the response and motion for leave out of time only

after his counsel conferred with counsel for Defendants, *see* Dkt. No. 33. Woolum failed

to re-file either his response or his motion for leave.

But Woolum did respond to the summary judgment motion. *See* Dkt. Nos. 37,

38, 39, & 40. And Digby filed a reply. *See* Dkt. No. 41.

### Legal Standards and Analysis

I.   <u>Motion to Dismiss</u>

   **A.   Legal Standards**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)

for failure to state a claim upon which relief may be granted, the Court "accepts all

well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). But a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(a)(2)))).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*,

556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id*. Instead, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities Project*, 920 F.2d at 899 ("Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context.")).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project*, 920 F.2d at 900 (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th

Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

While the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And a plaintiff may not amend his allegations through a response to a motion to dismiss. "[A] claim for relief" must be made through a pleading, FED. R. CIV. P. 8(a), and a response to a motion is not among the "pleadings [that] are allowed" under the Federal Rules of Civil Procedure, FED. R. CIV. P. 7(a); *see, e.g., Klaizner v. Countrywide Fin.*, No. 2:14-CV-1543 JCM (PAL), 2015 WL 627927, at *10 (D. Nev. Feb. 12, 2015) ("All claims for relief must be contained in a pleading. A response to a motion is not a pleading and it is improper for the court to consider causes of action not contained in the pleadings." (citations omitted)).

## B.    Analysis

"A municipality and/or its policymakers may be held liable under § 1983 'when execution of a government's policy or custom ... by those whose edicts or acts may fairly

be said to represent official policy, inflicts the [constitutional] injury.'" *Salazar-Limon v. City of Houston*, 826 F.3d 272, 277 (5th Cir. 2016) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); citation omitted). That is, "[t]here is no vicarious municipal liability under § 1983; rather, plaintiffs 'must prove that "action pursuant to official municipal policy" caused their injury.'" *Three Legged Monkey, L.P. v. City of El Paso, Tex.*, 652 F. App'x 236, 239 (5th Cir. 2016) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting, in turn, *Monell*, 436 U.S. at 691)).

To assert liability under *Monell*, a plaintiff must allege "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

"Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 579 (quoting, in turn, *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc))). "To proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997); footnote omitted); *see also Pinedo v. City of Dallas, Tex.*, No. 3:14-cv-958-D, 2015 WL 5021393,

at *5 (N.D. Tex. Aug. 25, 2015) ("To establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'" (quoting *Piotrowski*, 237 F.3d at 582)).

"Failure to train is a separate theory of municipal liability, but the same standard applies both to a failure to train claim and to a municipal liability claim." *Pinedo*, 2015 WL 5021393, at *9 (citations omitted); *but cf. Anderson v. Marshall Cnty., Miss.*, 637 F. App'x 127, 134 (5th Cir. 2016) (per curiam) ("Even within the difficult world of *Monell* liability, failure-to-train claims are especially difficult to establish." (citing *Connick*, 563 U.S. at 61 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."))).

"To plead a plausible claim, [a plainitff] must allege facts that enable the court to draw the reasonable inference that '(1) the training procedures were inadequate; (2) the city's policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused [his] injury.'" *Pinedo*, 2015 WL 5021393, at *9 (quoting *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011)); *accord Peña*, 879 F.3d at 623 (A "failure-to-train theory requires a plaintiff to prove that '1) the [city] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.'" (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001))).

Further, to the extent that Woolum also employs a ratification theory of

municipal liability, *see* Dkt. No. 1, ¶ 45, the Fifth Circuit has held that, "if the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final," *Peterson*, 588 F.3d at 849 (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

But the Fifth Circuit "has limited the theory of ratification to 'extreme factual situations,'" *id.* (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)), such as officers' killing of the innocent occupant of a truck or their shooting of a fleeing suspect in the back, *see id.* (citations omitted)); *accord Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017) ("Ratification ... is limited to 'extreme factual situations.'" (quoting *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009) (quoting, in turn, *Peterson*, 588 F.3d at 848))); *see also Davidson*, 848 F.3d at 395-96 ("Here, the underlying conduct by Officers Flagg and Jones, while unconstitutional, was not sufficiently extreme to qualify for a finding of ratification." (citing *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985))).

The Fifth Circuit has "also explained that a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Peterson*, 588 F.3d at 849 (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1161-62 (5th Cir. 1986)); *accord Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010); *Davidson*, 848 F.3d at 395; *see, e.g.*, *Medina v. Ortiz*, 623 F. App'x 695, 701 (5th Cir. 2015) (per curiam) ("The only evidence of ratification Medina identifies is that Ortiz accepted the officer's use of force report, refused to turn over evidence until the lawsuit was filed, and defends the deputies' actions in this case. None of these

allegations show that Ortiz approved of the use of excessive force or the denial of medical care." (citation omitted)).

Here, Woolum alleges that the Dallas City Council

> is the decision-maker and policy maker for the customs, practices, policies and procedures complained of herein. Dallas City Council had a duty, but failed, to implement and/or enforce policies, practices, procedures, and to ensure adequate training, supervision, and discipline with respect to compliance with these policies for Dallas Police Department.
>
> The Defendant, City of Dallas and Dallas City Council's failure to develop and implement the necessary policies and the resultant de facto policy of deliberate indifference to a widespread custom and practice of unconstitutional conduct was the moving force behind the violation of Plaintiff's [constitutional] rights ... and caused his unwarranted physical and mental anguish. For these civil rights violations and other causes of action discussed herein, Plaintiff seeks answers and compensation for his damages.

Dkt. No. 1 at 2.

While Woolum includes further allegations laying out a theory of municipal liability in his complaint, *see id.*, ¶¶ 43-56, these allegations are limited to legal conclusions and labels. And the complaint lacks the minimal factual allegations that ultimately could support any theory of *Monell* liability. *See Peña*, 879 F.3d at 621 ("Though [a plaintiff] need not offer proof of her allegations at this stage, she still must plead facts that plausibly support each element of § 1983 municipal liability under [each] theory." (citing *Iqbal*, 556 U.S. at 678)); *see, e.g., E.G. by Gonzalez v. Bond*, No. 1:16-cv-68-BL, 2017 WL 3493124, at *6 (N.D. Tex. June 29, 2017) ("Despite the various arguments made by the City, the Court should find that Plaintiffs have made factual allegations in their second amended complaint to state plausible claims based upon failures to train, supervise, and discipline. Plaintiffs have identified training,

-10-

supervision, and discipline procedures that are inadequate. They have also alleged that the City was deliberately indifferent in adopting the identified policies and that the inadequate policies directly caused their injuries. They have alleged sufficient facts to support these allegations and do not merely rely on conclusions and labels. When considering a motion to dismiss, minimal factual allegations are sufficient to assert a municipal liability claim." (citing *Harvey v. Montgomery Cnty.*, 881 F. Supp. 2d 785, 797 (S.D. Tex. 2012))), *rec. adopted*, 2017 WL 3491853 (N.D. Tex. Aug. 14, 2017).

The Court should therefore grant the City's renewed motion to dismiss and dismiss the claim(s) against it with prejudice.

II.    <u>Summary Judgment on Qualified Immunity</u>

A.    **Legal Standards**

"A plaintiff makes out a § 1983 claim if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law,'" *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019) (quoting *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008); brackets omitted). "But government officials performing discretionary duties" can respond to such a claim by asserting qualified immunity. *Id.* at 294 (citing *Haverda v. Hays Cnty.*, 723 F.3d 586, 598 (5th Cir. 2013)). If they do, a court must consider each official's actions separately. *See, e.g.,* *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007).

"Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v.*

*Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)); *accord Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011); internal quotation marks omitted); *accord City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 135 S. Ct. 1765, 1774 (2015); *cf. Rich*, 920 F.3d at 294 ("In sum, QI 'represents the norm, and courts should deny a defendant immunity only in rare circumstances.'" (quoting *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018))); *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019) (Courts "must think twice before denying qualified immunity.").

Review of a motion for summary judgment based on qualified immunity is accomplished in two steps, and, while a court may conduct the required two-step examination in any order, *see Pearson*, 555 U.S. at 236, "deciding the two prongs in order 'is often beneficial,'" *Darden v. City of Fort Worth*, 866 F.3d 698, 702 (5th Cir. 2017) (quoting *Pearson*, 555 U.S. at 236).

Regardless which prong is addressed first, a court must decide "whether the facts, taken in the light most favorable to the plaintiff, show the officer's conduct violated a federal constitutional or statutory right." *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014) (citing *Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014) (per curiam); *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)), *reversed on other grounds*, 136 S. Ct. 305 (2015). Put differently, under the first prong, a court simply must decide

"whether the plaintiff has alleged a violation of a constitutional right." *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008).

A court must also decide "whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores*, 381 F.3d at 395. This second prong of the analysis requires a court to determine "whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident." *Charles*, 522 F.3d at 511. That is, "whether it would have been clear to a reasonable [official] in the [defendants'] position that their conduct was unlawful in the situation they confronted." *Wood v. Moss*, 572 U.S. 744, 758 (2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001); internal quotation marks and original brackets omitted); *see also Mullenix*, 136 S. Ct. at 308 ("[a] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right'"(quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012))).

> This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 136 S. Ct. at 308 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004)). The [United States] Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741 "It is the plaintiff's burden to find a case in [her] favor that does not define the law at a 'high level of generality.'" *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 733 (5th Cir. 2016)).

*Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018) (citations

modified).[1]

The Supreme Court recently explained this inquiry in the Fourth Amendment

context:

> Where constitutional guidelines seem inapplicable or too remote, it does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness. An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." That is a necessary part of the qualified-immunity standard.

*Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) (quoting *Plumhoff v.

Rickard*, 572 U.S. 765, 778-79 (2014); reversing denial of summary judgment on a

qualified immunity defense); *see also Sause v. Bauer*, 138 S. Ct. 2561, 2562-63 (2018)

(per curiam) (reversing dismissal of a *pro se* complaint based on the defendants'

entitlement qualified immunity where the district court failed to liberally interpret the

---

[1] *See also Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011) (en banc) (A court "must be able to point to controlling authority – or a robust consensus of persuasive authority – that defines the contours of the right in question with a high degree of particularity." (footnote and internal quotation marks omitted)); *Lincoln v. Turner*, 874 F.3d 833, 850 (5th Cir. 2017) ("While we may look to other circuits to find clearly established law, we must consider 'the overall weight' of such authority. A 'trend' alone is just that. As of December 2013, only two circuits had weighed in on the 'contours of the right.' These cases alone do not provide sufficient authority to find that the law was clearly established." (footnote omitted)); *Bustillos*, 891 F.3d at 222 (holding that the plaintiff failed to shoulder her burden to "point[] ... to any case that shows, in light of the specific context of this case, that the [defendants'] conduct violated clearly established law" and that, although the court's "independent review [ ] uncovered" persuasive authority, "a single, fifty year old case from another circuit is [not] sufficient in this instance to have 'placed the ... constitutional question [at issue] beyond debate'" (quoting *al-Kidd*, 563 U.S. at 741)).

Fourth Amendment claims).

"When a defendant asserts qualified immunity, the plaintiff bears the burden of pleading facts that demonstrate liability and defeat immunity." *Shaw v. Villanueva*, 918 F.3d 414, 416-17 (5th Cir. 2019) (citing *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc)); *cf. McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2018) ("When the motion to dismiss raises the defense of qualified immunity, the plaintiff 'must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm ... alleged and that defeat a qualified immunity defense with equal specificity.'" (quoting *Zapata*, 750 F.3d at 485 (quoting, in turn, *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)))).

"Despite this burden-shifting, all reasonable inferences must be drawn in the non-movant plaintiff's favor." *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)).

That said, a plaintiff's burden at summary judgment "'to rebut a claim of qualified immunity once the defendant has properly raised it in good faith' ... 'is a demanding [one].'" *Mendez v. Poitevent*, 823 F.3d 326, 331 (5th Cir. 2016) (citations omitted).

And the qualified immunity defense is appropriately resolved at the summary judgment stage when (1) a plaintiff has established that the defendant has engaged in the complained-of conduct or (2) the court "skip[s], for the moment, over ... still-contested matters to consider an issue that would moot their effect if proved." *Harlow*,

457 U.S. at 818; *see also Haverda*, 723 F.3d at 599. "If resolution of [qualified immunity] in the summary judgment proceedings turns on what the defendant actually did, rather than on whether the defendant is immunized from liability ..., and if there are conflicting versions of his conduct, one of which would establish and the other defeat liability, then the case is inappropriate for summary judgment." *Haverda*, 723 F.3d at 599 (quoting *Barker v. Norman*, 651 F.2d 1107, 1123-24 (5th Cir. Unit A July 1981)).

Accordingly, a court's qualified immunity inquiry at this stage requires that the Court "accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004); *see Tolan*, 572 U.S. at 651 ("In articulating the factual context of the case, the Fifth Circuit failed to adhere to the axiom that in ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986))).[2] And, particularly applicable in *pro se* cases, "verified complaint[s] and other verified pleadings serve as competent summary judgment

---

[2] *See, e.g., Mitchell v. Cervantes*, 453 F. App'x 475, 477-78 (5th Cir. 2011) (per curiam) ("Mitchell's allegations in his verified complaint serve as competent summary judgment evidence and suggest a possible constitutional violation. ... Based on Mitchell's proffered facts, the appellants' use of force was not made in a 'good faith effort to maintain or restore discipline' and was not 'nontrivial' but disproportionate to any possible provocation. ... On Mitchell's allegations, as summarized by the district court, the appellants have not shown that their course of conduct was not objectively unreasonable under clearly existing law. Accordingly, they have not demonstrated that they are entitled to qualified immunity as a matter of law." (citations omitted)).

evidence." *Falon v. Holly*, 480 F. App'x 325, 326 (5th Cir. 2012) (per curiam) (citing *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003)).

"Although summary judgment may be appropriate based on a plaintiff's inability to prove the facts essential to recovery, this has 'nothing to do with the qualified immunity defense,'" *Haverda*, 723 F.3d at 599 (quoting *Barker*, 651 F.2d at 1124)), as "immunity ... [is] an entitlement distinct from the merits of the case," *Good v. Curtis*, 601 F.3d 393, 397 (5th Cir. 2010) (citation and quotation marks omitted)

> **B.    Analysis**

> 1.    <u>False Arrest</u>

"The Fourth Amendment protects citizens from false arrests – that is, arrests unsupported by probable cause." *Defrates v. Podany*, ___ F. App'x ____, No. 18-11177, 2019 WL 6044869, at *3 (5th Cir. Nov. 14, 2019) (citing *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009)). "Nonetheless, qualified immunity grants police officers some wiggle room for mistakes when it comes to probable cause." *Id.* So Woolum "must not only show that there was no probable cause but also that" Digby was "'objectively unreasonable in believing there was probable cause for the arrest.'" *Id.* (quoting *Davidson v. City of Stafford*, 848 F.3d at 391). "Put differently, qualified immunity protects [Digby] so long as [he] had 'arguable (that is, reasonable but mistaken) probable cause for [Woolum's] arrests.'" *Id.* (quoting *Club Retro*, 568 F.3d at 207); *see also Ikhinmwin v. Rendon*, No. 5:16-CV-184-OLG, 2017 WL 10768508, at *3 (W.D. Tex. Dec. 20, 2017) ("In the context of an assertion of qualified immunity at the summary judgment stage of an unlawful arrest claim, '[a]n officer's conduct is

objectively reasonable' – and the officer is entitled to qualified immunity – "'if a reasonable person in their position could have believed he had probable cause to arrest.'"" (quoting *Deville v. Marcantel*, 567 F.3d 156, 166 (5th Cir. 2009) (per curiam) (quoting, in turn, *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)))).

"An officer may conduct a warrantless arrest based on probable cause that an individual has committed even a minor offense, including misdemeanors." *Deville*, 567 F.3d at 165 (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)). And

> "[p]robable cause exists when the totality of facts and circumstances within a police officer's knowledge *at the moment of the arrest* are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Flores*, 381 F.3d at 402 (quotation omitted). The probable cause can be for any crime, not just the one the officer subjectively considered at the time. *Davidson*, 848 F.3d at 392.

*Defrates*, 2019 WL 6044869, at *3 (citation modified).

Woolum's best version of the material facts regarding his September 16, 2017 arrest as "reflected by proper summary judgment evidence," *Haggerty*, 391 F.3d at 655, not mere allegations, is set out in his December 5, 2019 declaration:

> On September 16, 2017, I put on my Black Lives Matter t-shirt and went to Lee Park, to counter-protest those protesting the removal of a confederate statue. I arrived at about 10:40am. At the time, there were only about 20 protesters present and no other counter-demonstrators that I could see. There were no designated "zones" and the park and statue are were open without restriction.
> I decided to just walk around to observe. I talked to three people. The first was a Marine Vietnam Vet who was there to support the protesters. I told him "Welcome Home" and thanked him for his service and sacrifice. I told him we may not agree on the Robert E. Lee statue, but I would never dishonor him by arguing about it. We shook hands and

went our separate ways.

     My second encounter was with a woman holding a sign that said "PROTECT OUR HERITAGE." I asked her what that heritage was. We exchanged a few comments and she was getting irritated, so I walked away toward a shady area to prepare my white "confederate surrender" flag.

     That's when I rendered first aid to a militia gentleman who had cut the back of his hand. After that, I took my white flag up to the Lee Pedestal to express my opinion and point of view. That's when the press asked me for comments and tried to interview me. Three different people with confederate or Texas flags tried to block the media's view and waved their flags in my face.

     After that, I moved back towards the perimeter/fence area but was followed by a few angry people who were yelling and harassing me. I did manage a few more quick interviews before moving about fifteen feet away into the shade where I had previously helped with the first aid.

     That's when the angry confederate sympathizer confronted me, got in my face yelling about where was Black Lives Matter when Houston needed help during Hurricane Harvey. I tried to explain that I had helped load some of the trucks that BLM-Dallas sent to Houston under another name but those facts set him off. I was on a slope with my back facing downhill when he pushed me hard. I stepped back for balance and felt he had grabbed my walking stick and was trying to wrestle it from me to use as a weapon. I struggled to hang on and at that instant several nonuniformed individuals knocked my hat off and wrestled me backwards towards a vehicle on the curb.

     Next thing I know I had my arms twisted behind back and was being place in handcuffs. I heard a spectator on my left, who was only five feet away, screaming to the police that the guy in the Texas Flag shirt with the beard started assaulting me.

     I did nothing wrong. I had committed no crimes. I did not use profane language. I did not fight anyone. I was simply exercising my right to free speech and I was attacked by protesters who disagreed with my views. I didn't even have an opportunity to defend myself before I was further victimized by Dallas Police by being handcuffed and falsely arrested.

Dkt. No. 37-1 at 1-2.

Neither this evidence nor the three videos Woolum that includes with his opposition, *see* Dkt. Nos. 38, 39, & 40, address probable cause – that is, "the totality of

facts and circumstances within [Digby's] knowledge at the moment of the arrest" and

whether those known facts and circumstances "are sufficient for a reasonable person

to conclude that [Woolum] had committed or was committing an offense." *Flores*, 381

F.3d at 402 (emphasis omitted). But Digby does offer his own evidence as to the facts

and circumstances known to him at the time of Woolum's arrest:

> At the protest, I was aware there were plain clothes DPD officers at Robert E. Lee Park interspersed in the crowd. It is my understanding that DPD officers at the scene witnessed Mr. Woolum using abusive and profane language in a public place, however I did not witness this behavior by Mr. Woolum. I did observed Mr. Woolum in a shoving type fight with protesters at Robert E. Lee Park. To help de-escalate the situation, I assisted plain clothes DPD officers in removing Mr. Woolum from the area of the fight.
>
> I approached as Mr. Woolum was being pulled away from the fight by plain clothes officers. Mr. Woolum who was carrying a cane with a white flag attached, thrust the cane into my face. I quickly reacted and seized Mr. Woolum's cane before he hit me in the face.
>
> Based on the facts and circumstances I knew at the time Mr. Woolum was arrested, I believed there was probable cause to arrest Mr. Woolum for the penal offense of disorderly conduct. The Texas Penal Code offense section 42.01 defines the offense of disorderly conduct as "a person commits an offense if he intentionally, or knowingly: (1) uses abusive, indecent, profane, or vulgar language in a public place, and the language by its very utterance tends to incite an immediate breach of the peace" or "(6) fights with another in a public place."
>
> I also know section 14.01 of the Texas Code of Criminal procedure authorizes a peace officer to arrest an offender without warrant for any offense committed in his presence or within his view. Because I witnessed Mr. Woolum fighting with others in a public place, I believed the decision to arrest Mr. Woolum for disorderly conduct was lawful.

Dkt. No. 30-1 at 5.

The Court is therefore not faced with controverted facts as to probable cause.

*See, e.g., Salazar-Limon*, 826 F.3d at 277 ("[A]lthough '[w]e resolve factual

controversies in favor of the nonmoving party,' we do so only 'when there is an *actual*

*controversy*, that is, when both parties have submitted evidence of contradictory facts.' Accordingly, we do not, 'in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts' to survive summary judgment." (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc))).

And Digby's "uncontradicted testimony ... could establish probable cause for the arrest" and therefore show that he is entitled to qualified immunity as to Woolum's Fourth Amendment claim. *Deville*, 567 F.3d at 165 ("Tarver stated in his deposition testimony that he detected Deville going 50mph in a 40mph zone using his radar gun, which he said he was operating correctly. Plaintiffs have offered Deville's deposition testimony, in which she testified that she was in fact not speeding, as evidenced by the fact that she set her vehicle's cruise control at the 40mph speed limit. However, evidence that the arrestee was innocent of the crime is not necessarily dispositive of whether the officer had probable cause to conduct the arrest because 'probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.' Thus, Tarver's uncontradicted testimony that his radar gun indicated that Deville was speeding could establish probable cause for the arrest." (citations and footnote omitted)); *see also Ikhinmwin*, 2017 WL 10768508, at *3 ("While the summary judgment evidence does not establish beyond dispute that Plaintiff actually violated Tex. Pen. Code § 42.03 prior to her arrest, it does establish beyond dispute that a reasonable officer in Defendant Rendon's position could have suspected that she had, and could have believed he had probable cause to arrest. (citing *Gibson*

*v. Rich*, 44 F.3d 274, 277-78 (5th Cir. 1995))).[3]

The Court should therefore dismiss this claim as against Digby with prejudice.

2.    First Amendment Retaliation

The finding that Digby could have arrested Woolum with probable cause not only entitles Digby to qualified immunity as to Woolum's Fourth Amendment claim (under the constitutional violation prong), it entitles Digby to qualified immunity as Woolum's First Amendment retaliation claim (under the clearly established law prong).

> [Woolum] does not meet [his] burden to overcome [Digby's assertion] of qualified immunity for [his] First Amendment claim because [he] does not show that it was clearly established in [September 2017] that [he] had a right to be free of retaliatory arrest when that arrest was supported by probable cause. *See Ashcraft v. City of Vicksburg*, 561 F. App'x 399, 401 (5th Cir. 2014) (holding that the plaintiff "has not demonstrated that she had a clearly established 'right' to be free from a retaliatory arrest that was otherwise supported by probable cause"). The Supreme Court made clear in *Reichle v. Howards*, 566 U.S. 658 (2012), and again in *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945 (2018), that such a right is not clearly established. *See Reichle*, 566 U.S. at 664-69 ("This Court has never recognized a First Amendment right to be free from retaliatory arrest that is supported by probable cause... [arresting officers] are thus

---

[3] *Cf. Fulson v. City of Columbus*, 801 F. Supp. 1, 7 (S.D. Ohio 1992) ("The court concludes that summary judgment on plaintiff's claim of invalid arrest without a warrant must be denied as to defendants Schuler and Donaldson. Plaintiff has stated in his affidavit that he heard the radio dispatcher state that there were no outstanding warrants for plaintiff's arrest. No affidavit from the arresting officers has been offered on this point, although the defendants maintain in the text of their motion for summary judgment that plaintiff was arrested on active arrest warrants. If, as plaintiff's evidence tends to suggest, the officers did not know about the outstanding warrants, and if there was no other valid basis for plaintiff's arrest, then plaintiff may be able to establish that his arrest was invalid, even if there were in fact warrants outstanding for plaintiff's arrest. The court concludes, in light of plaintiff's affidavit and the lack of any affidavits from defendants on this point, that a genuine issue of material fact concerning the knowledge of the officers has been demonstrated." (citation omitted)).

> entitled to qualified immunity."); *Lozman*, 138 S. Ct. at 1954 ("[W]hether in a retaliatory arrest case [suit should be barred] where probable cause exists ... must await a different case."). Accordingly, because [Digby did not violate] a First Amendment right of the plaintiff that was clearly established when [he] arrested [Woolum] in [September 2017, he is] entitled to qualified immunity with respect to [Woolum's First Amendment claim] for retaliatory arrest.

*Cano v. Vickery*, Civ. A. No. H-16-392, 2018 WL 4567169, at *6 (S.D. Tex. Sept. 24, 2018); *see Phillips v. Blair*, 786 F. App'x 519, 529 (6th Cir. 2019) ("Without controlling authority clearly establishing a First Amendment right to be free from a retaliatory arrest otherwise supported by probable cause, we also reverse the denial of qualified immunity on this claim."); *see also Novak v. City of Parma*, 932 F.3d 421, 429-30 (6th Cir. 2019) (discussing *Reichele*, *Lozman*, and a subsequent Supreme Court decision addressing retaliatory arrest, *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019): "[T]he Court held most recently in *Nieves* that a plaintiff generally cannot bring a retaliation claim if the police had probable cause to arrest. Though *Nieves* also created an exception to that general rule ... , the exception does not apply here because the officers would not have been aware of it at the time of Novak's arrest since the case was decided later." (citing *Nieves*, 139 S. Ct. at 1725)).

The Court should therefore dismiss this claim as against Digby with prejudice.

## Recommendation

The Court should grant both Defendant City of Dallas's renewed motion to dismiss [Dkt. No. 26] and Defendant Samuel Digby's motion for summary judgment on qualified immunity [Dkt. No. 29] and dismiss Plaintiff Albert E. Woolum's claims against these defendants with prejudice.

-23-

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 22, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE